UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Amy P.,

       Plaintiff,

     v.                               Civil Action No. 2:17-cv-94

Commissioner of Social Security,

       Defendant.

## OPINION AND ORDER
(Docs. 10, 11, 20)

     Plaintiff Amy P. brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act, requesting review and remand of the decision of the Commissioner of

Social Security denying her applications for Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI). Pending before the Court are Plaintiff's motion

to reverse the Commissioner's decision under sentence four of 42 U.S.C. § 405(g)

(Doc. 10), Plaintiff's motion to remand the Commissioner's decision under sentence

six of 42 U.S.C. § 405(g) (Doc. 11), and the Commissioner's motion to affirm the

decision and deny remand under sentence six (Doc. 20). For the reasons stated

below, Plaintiff's sentence four motion (Doc. 10) is GRANTED; the Commissioner's

motion (Doc. 20) is DENIED; and the matter is REMANDED for further proceedings

and a new decision. Given these rulings, Plaintiff's sentence six motion (Doc. 11) is

DENIED as moot.

## **Background**

Plaintiff was 42 years old on her alleged disability onset date of April 2, 2010. She has an associate's degree in nursing and worked as a registered nurse for approximately ten years, holding nursing jobs in the settings of a clinic, a visiting nurse service, and a nursing home. Before becoming a nurse, Plaintiff worked in retail fabric stores. She is divorced, and has seven children ranging in age from approximately 15 to 30. She lost custody of her children shortly after she and her ex-husband separated in 2010, and has had only limited visitation with them since the divorce.

Plaintiff grew up in Massachusetts with her parents, two brothers, and two step-siblings. She had a traumatic childhood, mostly the result of her parents both having mental health and substance abuse problems. She was sexually assaulted by her father from around the ages of 3 through 11, and also sexually assaulted by one of her brothers when she was 13. Plaintiff married when she was in her early twenties and had seven children with her ex-husband. In 2010, she and her ex-husband separated due to his emotional and physical abuse of her. Their divorce followed, with Plaintiff losing primary custody of the children. In March 2011, Plaintiff moved to Tunbridge, Vermont with her boyfriend. As of January 2017, the couple was engaged to be married.

Since childhood, Plaintiff has suffered from depression, anxiety, and posttraumatic stress disorder (PTSD). She has also, at times, carried diagnoses of bipolar disorder, attention deficit hyperactivity disorder, and personality disorder. At age 18, Plaintiff first entered psychotherapy for depression and anxiety. She first

entered a center for detoxification of drugs and alcohol at age 19. And she was first treated with antidepressant medication at age 24. Plaintiff has had several hospital admissions—including in July 2009, November 2010, and September 2011—due to depression and/or alcohol abuse, and has attempted suicide (by cutting and overdosing) multiple times. In October 2013, after a charge of domestic assault, the Vermont Department of Corrections, Probation and Parole, mandated that Plaintiff attend a substance abuse program. She thus attended outpatient substance abuse treatment at the Clara Martin Center until around January 2015. Two years later, at the January 2017 administrative hearing, Plaintiff testified that she drinks one or two beers once or twice each week (AR 1439), and smokes about half a pack of cigarettes each day (AR 1446).

In addition to her mental impairments, Plaintiff also suffers from gastrointestinal problems and asthma, among other physical ailments. As of January 2017, her gastrointestinal symptoms included feeling nauseous constantly, vomiting about five times a day, and having chronic diarrhea. (AR 1442–43.)

In July 2012, Plaintiff filed applications for DIB and SSI. In her disability application, she alleged that she has been unable to work since April 2, 2010 due to depression, anxiety, PTSD, an undiagnosed cardiac or neurological condition, and irritable bowel syndrome (IBS). (AR 328.) Plaintiff testified at the January 2017 hearing that, as a result of these impairments, she does nothing all day, other than sitting at the kitchen table looking out the window and checking Facebook every four to six weeks. (AR 1444–45.) She further testified that she does not tend to her own personal hygiene, has no interests or hobbies, very rarely goes outside, and does not

see any friends.  (*Id*.)  She stated that she misses a lot of medical appointments due to her impairments.  (AR 1444.)

Plaintiff's applications were denied initially and upon reconsideration, and she timely requested an administrative hearing.  On March 17, 2014, Administrative Law Judge (ALJ) Thomas Merrill conducted a hearing on the disability application.  (AR 37–62.)  Plaintiff appeared and testified, and was represented by counsel.  A vocational expert (VE) also testified at the hearing.  On May 5, 2014, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from her alleged disability onset date through the date of the decision.  (AR 16–28.)  Thereafter, the Appeals Council denied Plaintiff's request for review.  On August 24, 2015, Plaintiff filed a Complaint with this Court, and the matter was voluntarily remanded to the ALJ for further proceedings and a new decision.

On remand, the Appeals Council consolidated Plaintiff's July 2012 applications with a subsequent SSI application that was filed in December 2015, and returned the case to the ALJ for additional development of the record and a new decision.  (AR 1491–93.)  On January 11, 2017, a second administrative hearing was held before ALJ Merrill.  (AR 1434–58.)  Plaintiff again appeared and testified, and was represented by counsel.  A VE also testified, along with Plaintiff's fiancé.  On March 29, 2017, the ALJ issued a second decision finding that Plaintiff was not disabled under the Social Security Act from her alleged disability onset date through the date of the decision.  (AR 1407–24.)  Plaintiff filed the Complaint in this action on June 6, 2017.  (Doc. 3.)

**ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited

burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that, although Plaintiff had worked for short periods since her alleged disability onset date of April 2, 2010, she had not engaged in substantial gainful activity during that period. (AR 1410.) At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, a personality disorder, and alcohol abuse disorder. (*Id.*) Conversely, the ALJ found that Plaintiff's cardiac or neurological condition, IBS, shoulder issues, asthma, seizure activity, hypertension, diabetes, and gastroesophageal reflux disease, were nonsevere. (AR 1410–11.) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 1412–16.)

Next, the ALJ determined that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember[,] and carry out 1–4[-]step instructions for 2-hour periods throughout an 8-hour day and a 40-hour week." (AR 1416.) Given this RFC, the ALJ found that, although Plaintiff was unable to perform her past relevant work as a registered nurse (AR 1422–23), there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of receptionist, recreation attendant, and housecleaner (AR 1423). The

ALJ concluded that Plaintiff had not been under a disability from the alleged disability onset date of April 2, 2010 through the date of the decision. (AR 1424.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

**<u>Analysis</u>**

Plaintiff makes the following arguments in favor of reversal of the Commissioner's decision denying disability benefits: (1) the ALJ failed to follow this Court's and the Appeals Council's Orders of Remand; (2) the ALJ failed to identify and assess all of Plaintiff's severe impairments; (3) the ALJ improperly weighed the opinion evidence and substituted his own opinions for those of the medical experts; (4) the ALJ's RFC determination was not based on substantial evidence; and (5) the ALJ erred in finding that Plaintiff's symptoms are inconsistent with the medical evidence. (Doc. 10 at 1–2.) The Commissioner responds by arguing that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards. (Doc. 20 at 1.) More specifically, the Commissioner asserts that the ALJ complied with the Appeals Council's Order of Remand, properly considered the record as a whole in determining Plaintiff's severe impairments, reasonably weighed the medical opinion evidence and other evidence in determining Plaintiff's RFC, and appropriately evaluated Plaintiff's credibility. (*Id.* at 4.)

## I.    **Analysis of Medical Opinions**

The Court begins by reviewing the ALJ's analysis of the medical opinions. Plaintiff argues that the ALJ erred in his analysis of the opinions of treating mental

health providers Kevin Buchanan, MD; Peter Thomashow, MD; and Karen Butler, LMFT (Licensed Marriage and Family Therapist), improperly relying on his own interpretation of the medical evidence rather than on the opinions of these treating providers and the supporting medical evidence. As discussed below, the Court agrees.

The ALJ was required to analyze the opinions of Drs. Buchanan and Thomashow under the "treating physician rule," given their status as Plaintiff's treating physicians during the alleged disability period. Under that rule, a treating source's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2)[1]; *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993). When controlling weight is not given to a treating source's opinions, the ALJ must consider the following "factors" in determining how much weight, if any, to give the opinions: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the opinions are supported by relevant medical evidence or explanation; (4) whether the opinions are consistent with the record as a whole; (5) the specialization of the treating source with respect to the condition being

---

[1] The Social Security Administration recently adopted regulations that change the standards applicable to the review of medical opinion evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources. . . . [W]e will consider those medical opinions . . . together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). Because Plaintiff filed her claims before March 2017, however, the Court applies the treating physician rule under the earlier regulations (20 C.F.R. §§ 404.1527 and 416.927), and not under the more recent ones (20 C.F.R. §§ 404.1520c and 416.920c).

treated; and (6) any other factors that may be significant. 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

2004).

Treating source opinions may be rejected based on the ALJ's proper

consideration of any of these factors, and the ALJ need not expressly recite each

factor in his decision. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We

require no . . . slavish recitation of each and every factor where the ALJ's reasoning

and adherence to the regulation are clear.") (citing *Halloran*, 362 F.3d at 31–32).

Nonetheless, ALJs must "always give good reasons" for the weight they assign to a

treating source's opinions, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and failure to do

so is ground for remand, *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand

when the Commissioner has not provided 'good reasons' for the weight given to a

treating physician[']s opinion[s] and we will continue remanding when we encounter

opinions from ALJ[]s that do not comprehensively set forth reasons for the weight

assigned to a treating physician's opinion[s].").  Examples of "good reasons" to

discount the opinions of a treating source include the following: the opinions are

inconsistent with the bulk of the other substantial evidence, such as the opinions of

other medical sources, *see, e.g.*, *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641,

643–44 (2d Cir. 2007); the opinions are internally inconsistent, *see, e.g.*, *Micheli v.

Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012); the physician's relationship to the

claimant is "limited and remote," *see, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d

Cir. 2011); or the treating source lacked underlying expertise and gave only brief,

conclusory opinions unsupported by clinical findings or other evidence, *see* 20 C.F.R. § 404.1527(c)(3), (5).

The ALJ was not required to analyze the opinions of treating therapist Butler under the treating physician rule, because therapists are defined in the regulations as "other sources," 20 C.F.R. § 404.1513(d)(1), rather than "acceptable medical sources" like licensed physicians and psychologists, *id.* at § 404.1513(a). Although these "other source" opinions may be used "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work," 20 C.F.R. § 404.1513(d)(1), ALJs are not required to evaluate them in the same manner as required under the treating physician rule, 20 C.F.R. § 404.1527(a)(2). *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)[2]; *Duran v. Comm'r of Soc. Sec.*, 296 F. App'x 134, 136 (2d Cir. 2008) (finding no error in ALJ decision to disregard assessment of "medical records physician" because it was not from an acceptable medical source and did not include clinical findings). Still, ALJs are required to consider and analyze these opinions "on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file," SSR 06-03p, 2006 WL 2329939, at *3, and they must use the same factors for evaluating these opinions as are used to evaluate opinions from "acceptable medical sources," *id.* at *4 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)), including the length of the treatment relationship, the frequency of evaluation, the degree to which the opinion is

---

[2] The Social Security Administration rescinded SSR 06-03p, effective March 27, 2017. 82 Fed. Reg. 15263–01 (Mar. 27, 2017). The SSR still applies here, however, given that Plaintiff's claim was filed in July 2012, well before March 2017.

supported by other evidence, and the opinions' consistency with the record as a whole.

## A.    Dr. Buchanan

Beginning in October 2011, Plaintiff treated with psychiatrist Dr. Buchanan, seeing him approximately every two months.  (AR 798–99, 1111.)  On July 17, 2013, Dr. Buchanan completed a Medical Assessment of Listing Levels (Multiple) and Ability to Do Work-Related Activities (Mental), wherein he reported diagnoses of major depression, generalized anxiety, and PTSD; and stated that Plaintiff's current Global Assessment of Functioning (GAF) was 40 and her highest GAF in the prior year was 50.[3]  (AR 1111.)  Dr. Buchanan further stated that, despite being prescribed antidepressants, antianxiety medication, and sleep medication, Plaintiff suffered from low mood and high anxiety, and functioned "only at a minimal level."  (*Id.*)  Dr. Buchanan opined that Plaintiff had "Marked" restriction in activities of daily living; difficulties in social functioning; and difficulties in maintaining concentration, persistence, or pace; and that Plaintiff had experienced three or more episodes of decompensation that were of extended duration.  (AR 1113–14.)  The Doctor stated that Plaintiff's symptoms had persisted over the years and her functioning "has

---

[3]  "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'"  *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008) (quoting *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (DSM-4)).  A score of "41-50" indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)."  *Id.*  A score of "31-40" indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  *Id.*  In 2013, the American Psychiatric Association published the DSM-5, which "drop[s]" reference to the GAF.  *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) (DSM-5).

remained quite low." (AR 1114.) Dr. Buchanan further opined that, although Plaintiff could understand, remember, and carry out one-to-three-step tasks; she could not maintain concentration and attention for two-hour periods during an eight-hour workday doing simple work. (*Id.*) The Doctor also found that Plaintiff would require "a lot of support [and] supervision" in order to work on a sustained basis (*id.*), and would be able to work "few if any" hours each week on a consistent basis (AR 1115). Dr. Buchanan concluded that Plaintiff was incapable of performing even a low-stress job. (*Id.*)

The ALJ gave "less weight" to Dr. Buchanan's opinions on three principal grounds: (1) they are "inconsistent with his own clinical observations" (AR 1420); (2) they are inconsistent with the GAF scores documented in the record (AR 1420–21); and (3) Dr. Buchanan did not consider the impact of Plaintiff's alcohol abuse on her ability to function (AR 1421). None of these reasons is supported by the evidence. First, Dr. Buchanan's treatment notes are not inconsistent with his opinions; in fact, many of his treatment notes support his opinions. For example, in May 2012, Dr. Buchanan recorded that, although Plaintiff engaged well and had intact insight and judgment, she was "trembling" and "constantly anxious." (AR 960.) In June 2012, Dr. Buchanan noted that, although Plaintiff again was engaged and had intact insight and judgment, she was "very depressed and anxious," and had cut her arms a few weeks prior, resulting in her loss of weekly visits with her children. (AR 967.) In August 2012, Dr. Buchanan stated that Plaintiff "remains quite anxious" and "hardly goes out or does anything." (AR 970.) In October 2013, Dr. Buchanan recorded that Plaintiff was experiencing "significant anxiety which is

limiting her functioning and contributing to physical problems"; that her anxiety affected her every day; and that she had several panic attacks each week. (AR 1386.)

In finding that Dr. Buchanan's opinions are inconsistent with his treatment notes, the ALJ cited Dr. Buchanan's objective assessment of Plaintiff at appointments: she made normal eye contact, had organized thought processes, was engaged, and exhibited intact insight and judgment. (AR 1420–21; *see, e.g.*, AR 960, 970.) But "[a]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). This "cherry-picking" of the evidence "is especially problematic where mental illness is at issue, for a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [her] overall condition." *Id.* (internal quotation marks omitted). Moreover, these objectively neutral assessments of Plaintiff's insight, judgment, and thought processes, are not inconsistent with Dr. Buchanan's opinions that Plaintiff's depression, anxiety, and PTSD were severely limiting, as it is possible for a claimant to appear "normal" at a medical appointment while at the same time suffering from debilitating depression or another mental illness. *See Moody v. Berryhill*, Case No. 16-CV-03646-JSC, 2017 WL 3215353, at *10 (N.D. Cal. July 28, 2017) ("Plaintiff having a composed and 'normal' demeanor during doctor visits does not preclude her from experiencing anxiety and depression in other contexts.").

Furthermore, not only are Dr. Buchanan's opinions consistent with his own treatment notes, they are also consistent with the treatment notes and medical opinions of Plaintiff's other medical providers, including Dr. Thomashow and

therapist Butler, discussed below. (*See, e.g.*, AR 548 ("history of suicide attempts"), 691 (restrained with medication and "4[-]point restraints" due to "combative and abusive behavior"), 990 ("[d]epressed mood; blunted affect[;] [s]haky"), 1088 ("history of at least three psychiatric admissions"), 1330 ("isolated, depressed, lack of motivation, unable to employ healthy living skills"), 1959–62, 1973, 1809 ("almost seems hypomanic at times because mood will quickly become elated and very pleasant"), 1958 ("clearly still suffering from anxiety and depression and a change in her psychotropic medication management regimen is indicated," recommendation to see her psychotherapist twice weekly).

The ALJ's second reason for giving little weight to the opinions of Dr. Buchanan is that the opinions are inconsistent with the GAF scores documented in the record. The ALJ stated: "As required by the Appeals Council, I have . . . given special consideration to Dr. Buchanan's statement that [Plaintiff's] GAF score in July 2013 was only 40 and her highest GAF score over the prior year from July 2012 was only 50. This representation was incorrect." (AR 1420 (citation omitted); *see* AR 1111.) The ALJ then proceeded to discuss the various GAF scores contained in the record in detail. (AR 1420–21.) The parties also discuss the GAF scores in detail in their briefs. The fact remains, however—even despite the Appeals Council's admonishment in its June 2016 Order that the ALJ's decision "did not address Dr. Buchanan's 2013 statement that [Plaintiff's] GAF score was 40 and no higher than 50 throughout that year" (AR 1491)—that a claimant's GAF score is only "one factor" for an ALJ to consider in determining the claimant's ability to perform substantial gainful activity. *Parker v. Comm'r of Soc. Sec. Admin.*, Civil Action No.

2:10-CV-195, 2011 WL 1838981, at *6 (D. Vt. May 13, 2011) (citing 7th, 8th, 10th, and 11th Circuit cases); *see Ortiz Torres v. Colvin*, 939 F. Supp. 2d 172, 184 (N.D.N.Y. 2013); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score."). Moreover, a GAF score generally assesses the claimant's level of functioning only "at the time of the evaluation." DSM-4 at 30. Of note, in 2013, the American Psychiatric Association omitted reference to the GAF in the DSM-5 "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." DSM-5 at 16.

The ALJ here correctly acknowledged the limited usefulness of GAF scores in determining a claimant's ability to work, stating that "the Commissioner has declined to endorse the GAF scale for use in Social Security and SSI disability programs," and that "GAF scores reflect[] an estimate of the claimant's level of functioning at [one] particular time, and [are] not an indication of overall functioning." (AR 1420 (internal quotation marks omitted).) Yet still, the ALJ's decision appears to heavily rely on Plaintiff's various GAF scores, and, most problematic, particularly on her higher scores, many of which were assigned well before the alleged disability onset date of April 2, 2010. (*See* AR 1417–18, 1420–21.) For example, the ALJ discusses scores of 65 and 70, which were assigned in 2007 and 2009, respectively. (*See* AR 382, 384, 422, 562, 1417.) Notably, even these medical records from before the alleged disability onset date indicate that Plaintiff suffered from longstanding depression, as is recorded in the more recent medical records, though the illness does not appear to have been as severe during that earlier period.

The Court finds that the ALJ improperly relied on Plaintiff's GAF scores that indicated moderate limitations, while discounting or ignoring her scores that indicated significant limitations. More generally, the ALJ simply appears to have put too much emphasis on Plaintiff's GAF scores, *see Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("A GAF score is . . . not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues."), and should not have discounted the opinions of Dr. Buchanan on the basis of these scores, particularly those assigned by Dr. Buchanan himself, *see Carton v. Colvin*, No. 3:13–CV–379 (CSH), 2014 WL 108597, at *14, 15 (D. Conn. 2014) (ALJ improperly discounted treating source opinion on the grounds that "the [doctor's] finding of extreme difficulties is patently inconsistent with [her] own assessment of a GAF of 55"; "the ALJ erred in relying on the GAF score as an indicat[ion] of the severity of plaintiff's mental impairment" (internal quotation marks omitted)); *Restuccia v. Colvin*, No. 13 Civ. 3294(RMB), 2014 WL 4739318, at *8, 9 (S.D.N.Y. 2014) (ALJ improperly "concluded that [the treating psychiatrist's] opinion was inconsistent with the psychiatrist's own assessment of the claimant's GAF score showing only mild limitations"; "ALJ did not have a sufficient basis for not according controlling weight to [the psychiatrist's] opinion" (internal quotation marks omitted)); *Daniel v. Astrue*, No. 10–CV–5397 (NGG), 2012 WL 3537019, at *10 (E.D.N.Y. 2012) ("[Doctor's] GAF score of 55, while relevant, does not contradict his ultimate finding that [plaintiff] was disabled and unable to work[,] because a GAF score does not have a direct correlation to the severity requirements

in [the SSA's] disorders listings." (last alteration in original) (internal quotations omitted)).

The ALJ's third reason for discounting Dr. Buchanan's opinions—that Dr. Buchanan did not consider the impact of alcohol on Plaintiff's ability to function—is also unsupported.  In his July 2013 Medical Assessment, Dr. Buchanan opined that Plaintiff's alcohol or substance abuse did not contribute to her impairments.  (AR 1115.)  A few months later, in an October 2013 treatment note, Dr. Buchanan discussed that Plaintiff was abusing alcohol, which had contributed to her recent domestic assault charge resulting in a year of probation.  (AR 1387.)  Dr. Buchanan stated that he and Plaintiff "discussed that the [alcohol use] [wa]s working against her in regards to treating her depression, and that [he was not] comfortable w[ith] her being prescribed [K]lonopin and drinking."  (*Id.*)  If the ALJ was concerned that these statements indicated a change in Dr. Buchanan's opinion regarding the impact of Plaintiff's alcohol abuse on her impairments, he should have re-contacted the Doctor to clarify.  As the record stands, however, there is no evidence to suggest that Dr. Buchanan's July 2013 opinion that Plaintiff's alcohol abuse did not contribute to her impairments changed.  Moreover, as discussed below, it was legal error for the ALJ to consider Plaintiff's alcohol abuse in the context of his assessment of the weight of Dr. Buchanan's medical opinions.  *See Vernon v. Astrue*, No. 06 Civ. 13132 (RMB)(DF), 2008 WL 5170392, at *20 (S.D.N.Y. Dec. 9, 2008) ("While drug and alcohol use is relevant in determining whether a claimant is disabled under the regulations, *see* 20 C.F.R. § 416.935, it bears no relevance to the

weight that must be given to the opinion of a treating physician." (citing 20 C.F.R. §§ 416.927(d)(2), 416.935)).

Although ALJs are entitled to use discretion in weighing the medical evidence as a whole, *see Veino v. Barnhart*, 312 F.3d 578, 587–88 (2d Cir. 2002), they are required to follow the regulations, particularly in assessing the weight of the opinions of a treating physician such as Dr. Buchanan. *See* 20 C.F.R. § 404.1527(c)(2); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("[E]ven when a treating physician's opinion is not given 'controlling' weight, the regulations require the ALJ to consider several factors in determining how much weight it should receive."). Here, the ALJ failed to appropriately value three important factors in assigning a weight to Dr. Buchanan's opinions: (1) Dr. Buchanan examined and treated Plaintiff, whereas the agency consultants—whose opinions the ALJ gave "great weight" (AR 1419, 1420) and "[g]reater weight" (AR 1422)—did not; (2) Dr. Buchanan's opinions are supported by his own and other treating medical providers' treatment notes and hospital reports; and (3) Dr. Buchanan's opinions are consistent with the opinions of Plaintiff's other medical providers and with the record as a whole.

### B.    Dr. Thomashow

For similar reasons, the ALJ erred in his analysis of the opinions of psychiatrist Dr. Thomashow, who treated Plaintiff approximately once per month from March 2015 through November 2016.  (*See* AR 1842–1959.)  On November 21,

2016, Dr. Thomashow completed a Mental Impairment Questionnaire, diagnosing

Plaintiff with major depression, anxiety disorder (not otherwise specified), and PTSD;

and describing Plaintiff's prognosis as "guarded." (AR 1959.) Dr. Thomashow

opined that Plaintiff suffered from "very depressed mood," "[a] very high degree of

anxiety," and "very low energy and motivation;" and functioned only at a "minimal

level" and was "isolated." (*Id.*) Like Dr. Buchanan, Dr. Thomashow opined that

Plaintiff had "Marked" restriction in activities of daily living and difficulties in

maintaining concentration, persistence, or pace. (AR 1961.) The Doctor further

opined that Plaintiff had "Extreme" difficulties in maintaining social functioning, and

had experienced three episodes of decompensation of extended duration. (*Id.*)

Dr. Thomashow concluded that, due to Plaintiff's "very low motivation [with]

[activities of daily living] and basic socialization," increasing isolation, and severe

depression; she would have difficulty working at a regular job on a sustained basis

and would be absent from work for "more than four days per month." (AR 1962.)

These 2016 opinions of Dr. Thomashow are clearly consistent with the 2013

opinions of Dr. Buchanan. Moreover, they are supported by the record, as discussed

above. Nonetheless, the ALJ assigned "limited weight" to Dr. Thomashow's opinions

on the sole ground that they are inconsistent with the Doctor's own clinical notes.

(AR 1422.) Substantial evidence does not support this assessment, which appears to

have resulted, again, from the ALJ's selective reading of the record. For example, in

April 2015, Dr. Thomashow recorded the following psychiatric observations of

Plaintiff in a treatment note: "Depression, Tearfulness, Loss of Interests," and stated

that Plaintiff "is clearly still suffering from anxiety and depression[,] and a change in

her psychotropic medication management regimen is indicated." (AR 1957, 1958.)
Dr. Thomashow recommended that Plaintiff "try and see her psychotherapist twice
weekly for the next few weeks." (AR 1958.) Although Dr. Thomashow states in some
of his treatment notes that Plaintiff's depression and anxiety are under good control
and that she has normal thought process, a pleasant affect, and good insight (*see,
e.g.*, AR 1859, 1862); as discussed above, it is possible for a claimant to appear
normal at a medical appointment while at the same time suffer from debilitating
depression or other mental illness. *See Moody*, 2017 WL 3215353, at *10. And
Dr. Thomashow clearly believed Plaintiff was significantly affected by her depression
and other mental illnesses, despite her objective appearance otherwise during many
appointments. (*See* Doc. 11-1 at 1.) In sum, several factors—particularly consistent
with the opinions of other treating providers—favor affording more than "limited
weight" (AR 1422) to Dr. Thomashow's opinions.

### C.    Therapist Butler

Likewise, the ALJ did not assign enough weight to the opinions of Plaintiff's
treating therapist, Karen Butler. Butler initially assessed Plaintiff for mental health
treatment in July 2011, and thereafter treated Plaintiff from March to August 2012
and February 2015 to December 2016. (AR 955, 992, 1050–68, 1974.) In December
2016, Butler noted diagnoses of PTSD and major depressive disorder, "severe with
anxious distress"; and opined that Plaintiff's symptoms—including difficulty getting
out of bed, completing daily tasks, leaving the house, and sustaining attention for
any length of time—"would interfere with her ability to sustain full[-]time work of
any kind." (AR 1973.) Butler added that Plaintiff's symptoms had "caused her to

miss about half of her scheduled appointments with this clinician," and concluded that Plaintiff's prognosis "is not hopeful any time soon." (*Id.*)

The ALJ gave "[n]o weight" to Butler's opinions, on the grounds that: (1) Butler "is a Licensed Marriage and Family Therapist, not an accepted medical source"; (2) Butler "sees [Plaintiff] in couples therapy with her partner"; (3) Butler's own notes do not support disability, given her observations that Plaintiff was "well[-]groomed, with good eye contact, engaged, friendly, and cooperative"; and (4) Butler did not assess Plaintiff's functional capacity to work. (AR 1422.) It is true that Butler did not complete a mental functional capacity assessment of Plaintiff, but this is not a sufficient reason to give no weight at all to the opinions of a treating therapist. The remaining three reasons given by the ALJ to afford no weight to Butler's opinions are unsupported or legally insignificant. First, contrary to the ALJ's finding, like with the treatment notes of Drs. Buchanan and Thomashow, Butler's treatment notes support her opinions. For example, in June 2012, Butler noted that Plaintiff "reports that she continues to struggle today with severe depression" (AR 963) and is feeling "extremely depressed" (*id.*), and that "[t]he depression has been getting worse and worse" (AR 964). In July 2012, Butler observed that Plaintiff exhibited a "[d]epressed mood" with a "blunted affect," and was "[s]haky." (AR 969.) Notably, in the same treatment note where Butler recorded that "[t]he depression has been getting worse and worse," she described Butler as "well dressed and well groomed," "[m]aintain[ing] good eye contact," having a "[f]ull affect," and being "[f]riendly." (AR 964.) Thus, like Drs. Buchanan and Thomashow,

Butler found that Plaintiff could appear objectively normal at appointments but still suffer from severe depression.

Second, the ALJ also erred in stating that Butler saw Plaintiff only in couples therapy with her partner. In fact, Butler treated Plaintiff in individual therapy at least from March 27 through August 22, 2012 (*see* AR 955, 958, 964, 966, 968–69, 971), and even when Butler treated Plaintiff in couples therapy, the "identified client" was Plaintiff, not her partner (AR 1973). Third, Butler's status as a nonacceptable medical source is not a good reason to give her opinion no weight. As noted above, although the regulations provide that the opinions of "other sources" are not entitled to the same weight as those of acceptable medical sources, 20 C.F.R. §§ 404.1513(a), 416.913(a), the ALJ is nonetheless required to provide a reasonable explanation, considering the regulatory factors, for his decision to afford little weight to the opinions of other sources like Butler. *See, e.g., Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (citing SSR 06-03p, 2006 WL 2329939, at *2). Social Security Ruling 06-03p states that, in addition to evidence from "acceptable medical sources," ALJs may use evidence from "other sources," including therapists, to show the severity of the claimant's impairments and how they affect the claimant's ability to function. SSR 06-03p, 2006 WL 2329939, at *2. The Ruling explains: "Often, these sources have close contact with [claimants] and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." *Id.* at *3. Here, Butler had this "close contact" with Plaintiff, observing and working with Plaintiff in her professional capacity as a Licensed Marriage and Family Therapist on a biweekly basis for almost

two years.  Moreover, as discussed above, Butler's opinions are consistent with those of Plaintiff's other treating providers including Drs. Buchanan and Thomashow, a factor the ALJ should have considered in assessing the value of Butler's opinions.

The ALJ's failure to articulate good reasons for discounting the opinions of treating physicians Dr. Buchanan and Dr. Thomashow and treating therapist Butler—all of which are consistent with each other—constituted legal error. Remand is thus appropriate for the ALJ to reassess the weight of these opinions based on the relevant factors and the record as a whole.  Although the ALJ still may conclude that these opinions are not entitled to significant weight, the ALJ must provide good reasons supported by substantial evidence for this assessment.

## II.    Appeals Council Order

Plaintiff argues that the ALJ erred in failing to follow the Appeals Council's June 2016 Order.  Specifically, Plaintiff claims the ALJ failed to adequately consider Dr. Buchanan's opinions, as ordered by the Appeals Council.  Moreover, Plaintiff asserts that the ALJ's selective reliance on the higher GAF scores over the lower scores disregarded the Appeals Council's finding that the low GAF scores assigned by Dr. Buchanan were consistent with treatment notes.

For the reasons explained above, the Court agrees that the ALJ erred in failing to follow the June 2016 Appeals Council Order (AR 1491–93).  *See Cabibi v. Colvin*, 50 F. Supp. 3d 213, 229 (E.D.N.Y. 2014) ("If an ALJ fails to comply with an Appeals Council remand order, their decision is subject to judicial review and can form the basis for a remand to the Commissioner.") (citing 42 U.S.C.A. § 405(g)).  In particular, the ALJ erred in finding that the Appeals Council's statement about GAF

scores was "incorrect" (AR 1420), and in failing to afford weight to Dr. Buchanan's opinions on the basis that they are, as stated by the Appeals Council, "consistent with treatment notes documenting a suicide attempt and significant anxiety" (AR 1491). On remand, the ALJ should correct these errors.

## III.  Alcohol Dependence

Plaintiff further claims that the ALJ should have found that her alcohol abuse disorder was not severe after 2014, given that there are no records containing a diagnosis of alcohol dependence or abuse after Plaintiff attended substance abuse treatment ending in around September 2014. The Court makes no finding on this factual issue, but instead finds that the ALJ failed to follow the proper legal analysis regarding Plaintiff's alcohol abuse.

The ALJ referenced Plaintiff's alcohol consumption throughout his decision. Specifically, as discussed above, the ALJ gave less weight to the opinions of treating physicians Drs. Buchanan and Thomashow based in part on their failure to "consider[] the impact of alcohol on [Plaintiff's] functioning." (AR 1421; *see* AR 1422.) In addition, the ALJ found that Plaintiff's alcohol abuse disorder was a severe impairment at step two. (AR 1410–11.) At step three, the ALJ stated that "[t]here is evidence that [Plaintiff] has a history of alcohol abuse with related legal issues." (AR 1415.) In considering Plaintiff's RFC, the ALJ stated that, although Plaintiff had an "episode of agitation" in August 2010, this episode was "in the context of drinking" (AR 1417); that Plaintiff "reported drinking 2–3 alcoholic beverages per day" in March 2011 (*id.*); that in September 2011, Plaintiff had "a second hospitalization in the context of alcohol intoxication" (AR 1418); that in March 2012, Plaintiff "admitted

to ongoing alcohol use" (*id*.); and that in July 2012, Plaintiff "complained of syncopal episodes, but . . . admitted to drinking on a daily basis" (*id*.). The ALJ also noted that, although Dr. Buchanan stated in a treatment note that Plaintiff "denied substance abuse, [she] was arrested for domestic violence in the context of alcohol use per notes from later that month" and "entered into mandated substance abuse treatment at Clara Martin Center." (*Id*.) The ALJ continued, noting as follows: Plaintiff "admitted to drinking [six][] beers per day over the past [six] months" in October 2013; "[d]espite attending a group substance abuse treatment program, [Plaintiff] continued to have positive urine screens for alcohol"; "in May 2014, [Plaintiff] admitted that she had been drinking too much for the past [three-and-one-half] years"; and Plaintiff "continued to drink alcohol and . . . stopped attending treatment for this after her probation ended in August 2014." (*Id*.) In assessing the July 2013 medical opinions of Dr. Buchanan, the ALJ noted that "[t]he only mention of focus or pace issues was when [Plaintiff] was reporting missing her children, who were in state custody due to her substance abuse," and that "[i]n October 2016, [Dr. Buchanan] . . . acknowledged that [Plaintiff] had told him she had stopped drinking but at that date, in the context of positive urine screens, she admitted that this was not true."[4] (AR 1421.)

The ALJ's many references to Plaintiff's alcohol abuse, at virtually every step of the sequential analysis, appear to conflate the substance abuse analysis with the disability determination itself. *See Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th

---

[4] Plaintiff correctly points out that the ALJ erred by stating that, in October *2016*, Plaintiff admitted to Dr. Buchanan that she was still drinking. (AR 1421.) In fact, that statement was made in October *2013*, not 2016. (AR 1357.)

Cir. 2003) ("The ALJ must base this disability determination on substantial evidence of [claimant's] medical limitations without deductions for the assumed effects of substance use disorders.").  Remand is therefore necessary so the ALJ can separately determine Plaintiff's disability before assessing whether her alcohol abuse constitutes a contributing factor material to that determination, as required by 20 C.F.R. §§ 404.1535 and 416.935.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) ("When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis. . . .  The critical question is whether [the SSA] would still find [the claimant] disabled if [she] stopped using drugs or alcohol." (all but first alteration in original) (internal citations and quotations marks omitted)); *see also Webb v. Colvin*, No. 12-CV-753S, 2013 WL 5347563, at *5 (W.D.N.Y. Sept. 23, 2013) (remanding where "the lack of further specific discussion of [the claimant's] limitations renders it impossible to determine whether the ALJ's mental RFC determination was made after improperly discounting any non-exertional limitations stemming from [the claimant's] significant history of drug and alcohol abuse"); *Day v. Astrue*, No. 07 CV 157(RJD), 2008 WL 63285, at *6 (E.D.N.Y. Jan. 3, 2008) (remanding where "ALJ's conclusion that '[i]n spite of the opinion of Dr. Conciatori, there is no evidence to the effect that absent drug and alcohol abuse, the claimant suffered from a major depressive disorder' appears to conflate the substance abuse analysis with the disability determination itself").

## IV.    Remaining Issues

Plaintiff makes several additional arguments, including: (1) the ALJ should have found her PTSD and functional bowel syndrome to be severe impairments,[5] or at least should have included the symptoms and limitations Plaintiff suffered as a result of these impairments in his RFC determination; (2) the ALJ's RFC determination should have accounted for Plaintiff's severe depression and PTSD; (3) the ALJ erred in selectively citing limited parts of the record in assessing Plaintiff's credibility and mistakenly citing the record when he stated that Plaintiff's fiancé testified that Plaintiff used the computer "all day, every day" (AR 1417; *see* AR 42, 47, 1444, 1449); and (4) the ALJ relied too heavily on a job questionnaire from an employer which was indicative of Plaintiff's condition only from August 7 through September 3, 2011 (AR 360–61; *see* AR 1414–15, 1962, 1974).

Because the ALJ is required to reevaluate the weight of the medical opinions on remand, and this analysis will likely affect the ALJ's credibility assessment, RFC determination, and the remaining steps of the sequential evaluation process, the Court does not reach Plaintiff's remaining claims.

## V.    New Evidence

Plaintiff contends that the case should be remanded under sentence six of 42 U.S.C. § 405(g) for consideration of "new evidence": a one-paragraph letter from Dr. Thomashow, dated April 20, 2017, stating that Plaintiff "suffers from chronic depression and anxiety" and that "[t]he 'symptoms do not include' section of

---

[5]  Plaintiff also argues that there is no evidence to support the ALJ's finding that Plaintiff's personality disorder was severe.  (Doc. 10 at 4.)  The issue is immaterial, however, as the ALJ's inclusion of this impairment among Plaintiff's severe impairments had no effect on the ALJ's decision.

[Dr. Thomashow's treatment notes] only pertain[s] to symptoms that are reported or observed at the time of the appointment." (Doc. 11-1 at 1.) Given that the case is being remanded for the independent grounds discussed above, pursuant to sentence four of 42 U.S.C. § 405(g), it is unnecessary to perform the three-part test prescribed in *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) for determining whether this new evidence provides a basis for remand under sentence six of 42 U.S.C. § 405(g). Upon remand, the ALJ will consider all appropriate evidence, including Dr. Thomashow's April 20, 2017 letter.

## VI.    Remand for Calculation of Benefits

Finally, Plaintiff requests that, instead of remanding for further proceedings and a new decision, the Court should remand solely for calculation of benefits, given that the case has been pending for over six years and further development of the record is unnecessary. (Doc. 24 at 7–8.) But in cases where there are gaps in the administrative record or, as here, the ALJ has applied an improper legal standard, it is more appropriate to remand for further proceedings and a new decision. *See Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Thus, Plaintiff's request that the matter be reversed and remanded solely for calculation of benefits is denied. However, in light of the time elapsed since Plaintiff's initial filing for benefits—over six years, in part due to the ALJ's failure to comply with the directives contained in the Appeals Council's June 2016 Order—this claim should receive expedited consideration on remand.

## **Conclusion**

For these reasons, the Court GRANTS, in part, Plaintiff's motion seeking reversal of the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) (Doc. 10), DENIES the Commissioner's motion to affirm the decision (Doc. 20), and REMANDS for further proceedings and a new decision in accordance with this Opinion and Order. Given these rulings, the Court DENIES as moot Plaintiff's motion seeking remand under sentence six of 42 U.S.C. § 405(g) (Doc. 11).

Dated at Burlington, in the District of Vermont, this 7th day of May 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge